# United States Court of Appeals
## For the First Circuit

No. 12-2030

UNITED STATES OF AMERICA,

Appellee,

v.

ROBERTO ENCARNACIÓN-RUIZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José A. Fusté, U.S. District Judge]

Before

Thompson, Baldock,[*] and Lipez,
Circuit Judges.

Mary Davis, with whom Tisdale & Davis, P.A., was on brief, for
appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, Chief,
Appellate Division, with whom Rosa Emilia Rodríguez-Vélez, United
States Attorney, was on brief, for appellee.

May 28, 2015

[*]Of the Tenth Circuit, sitting by designation.

**LIPEZ, Circuit Judge**. This case presents an issue of first impression, requiring us to decide the applicability of the Supreme Court's decision in Rosemond v. United States, 134 S. Ct. 1240 (2014), to appellant's claim that the government has to prove beyond a reasonable doubt that an aider and abettor to a production of child pornography charge knew that the victim was a minor.

**I.**

Roberto Encarnación-Ruiz ("Encarnación") was charged with one count of aiding and abetting the production of child pornography in connection with a pornographic film that he made in 2010 with Rey Vilanova-Delgado ("Vilanova") and KMV, a 14-year-old girl. In the district court, Encarnación argued that he was mistaken as to KMV's age, and his mistake of age should be a defense to the child pornography charge. The government moved in limine to preclude Encarnación from arguing that he "lacked knowledge of, or [was] mistaken about, the age of the minor victim." The district court granted the motion in limine. Encarnación subsequently entered a conditional guilty plea. In entering this plea, he reserved his right to appeal "whether the defendant's mistake of age of the victim can be raised as a defense to a charge of production of child pornography under [18 U.S.C. §] 2251(a)."

After this case was argued before us, the Supreme Court issued its opinion in Rosemond, which clarified the mens rea

requirement for aiding and abetting a crime. The Court held that the government must prove that an aider and abettor of criminal conduct participated with advance knowledge of the elements that constitute the charged offense. 134 S. Ct. at 1248-49. We requested supplemental briefing from the parties to address whether Rosemond "requires the government in a prosecution for aiding and abetting a violation of 18 U.S.C. § 2251(a) to prove the aider and abettor's knowledge of the element that the victim is a minor." Encarnación contends that Rosemond supports his argument that, to aid and abet the production of child pornography, he must have had advance knowledge that the victim was a minor. The government counters that there is no knowledge requirement for principals of a § 2251(a) offense,[1] and, hence, Rosemond does not create such a requirement for aiders and abettors.

After review, we agree with Encarnación that Rosemond requires the government in a prosecution for aiding and abetting a violation of 18 U.S.C. § 2251(a) to prove the aider and abettor's knowledge that the victim was a minor. Therefore, we vacate Encarnación's conviction and remand the case to the district court for further proceedings.

---

[1] As we shall explain, this case does not require us to decide whether a principal can be found guilty of producing child pornography without knowing the victim was a minor, and we offer no view on that issue.

Encarnación met KMV at a beach near San Juan, Puerto Rico, when she was in the company of Vilanova. Vilanova in turn knew KMV through one of her family friends, Félix Iván Rodríguez-Acevedo. Because KMV lacked Internet access at home, she would occasionally visit Vilanova's apartment to use his computer and Internet connection. At some point during KMV's visits, Vilanova and Rodríguez-Acevedo began to engage in sexual acts with her. Other men, including Encarnación, came to the apartment when she was there and also engaged in sexual acts with her.[2]

Encarnación and Vilanova were recorded engaging in sexual acts with KMV in a video made in April or May 2010. KMV was 14 years old at the time. Police discovered the recording about a year later, after Vilanova's neighbors became aware of his sexual relationship with KMV and attacked him with a baseball bat. This incident sent Vilanova to the hospital and the police to his door.

Encarnación was charged, in count three of a superseding indictment, with aiding and abetting Vilanova to use KMV, a minor, in the production of child pornography, in violation of 18 U.S.C. § 2251(a) and 18 U.S.C. § 2.[3] Section 2, the aiding and abetting

_____

[2] We set forth further background facts in our opinion in United States v. Ramos, 763 F.3d 45, 49-50 (1st Cir. 2014).

[3] Co-defendants Vilanova, Rodríguez-Acevedo, Zairo Ramos, and Félix Javier González-Morales were charged in other counts of the superseding indictment. Those charges included a video of another minor and another video of KMV recorded in May or June of 2010.

statute, provides that a defendant "is punishable as a principal" if he "aids, abets, counsels, commands, induces or procures" the commission of a federal crime.  After the district court rejected Encarnación's mistake of age defense, he entered a conditional guilty plea and was sentenced to a mandatory minimum of 15 years in prison.[4]

## III.

### A. Waiver and Forfeiture

The argument that Encarnación has raised on appeal — that the government must prove that an aider and abettor of the production of child pornography under 18 U.S.C. § 2251(a) knew that the victim was a minor — was not the exact argument that he presented in the district court.  This fact raises two preliminary issues: (1) whether Encarnación's argument is waived because it exceeds the scope of the issue preserved in his plea agreement, or (2) whether the argument is forfeited, and, therefore, we should review it under the plain error standard.  The dissent adds that Encarnación waived his Rosemond argument because he only addressed

---

Encarnación was not charged in connection with this later video. See Ramos, 763 F.3d at 50 & n.4.  Vilanova, Rodríguez-Acevedo, and González-Morales pleaded guilty as part of plea agreements with the government.  Id. at 50 n.4.  Ramos was found guilty at trial.  Id. at 51.

[4] Encarnación was also charged and convicted of statutory rape of KMV in San Juan Superior Court under Article 142 of the Puerto Rico Penal Code.  The government could not have charged him under the federal statutory rape statute because his sexual activity with KMV did not occur on federal property.  See 18 U.S.C. § 2243(a).

it in a cursory fashion on appeal.  We address the waiver and forfeiture issues in turn.

### 1. Waiver

#### a. Plea Agreement

Encarnación's plea agreement contained a conditional waiver provision where he agreed to "waive[] and permanently surrender[] his right to appeal the judgment and sentence in this case" but preserved the right to appeal "the unresolved legal issue in the First Circuit of whether the defendant's mistake of age of the victim can be raised as a defense to a charge of production of child pornography under [18 U.S.C. §] 2251(a)."  Plea Agreement at 10.  When determining whether an appeal falls within a waiver's scope, "we rely on basic contract interpretation principles, construing the agreement where possible to give effect to every term and phrase, and construing any ambiguities in favor of allowing the appeal to proceed." United States v. Santiago-Burgos, 750 F.3d 19, 23 (1st Cir. 2014) (internal citation omitted).

Encarnación's appellate argument fits within the question he preserved in the plea agreement.  He contends that he was mistaken as to KMV's age and, because he was charged as an aider and abettor, his lack of knowledge that the victim was a minor is a defense to a § 2251(a) charge.  Put differently, the argument that the prosecution cannot establish the mens rea element of aiding and abetting because it cannot prove beyond a reasonable

doubt that a defendant knew that the victim was a minor is a "defense" to a § 2251(a) charge.  See 1 Wayne LaFave, Substantive Criminal Law § 5.6(a) (2d ed. 2014) (hereinafter LaFave) ("[I]gnorance or mistake of fact . . . is a defense when it negat[es] the existence of a mental state essential to the crime charged.").  A defendant who successfully raises such a defense would be acquitted by a jury because the government had failed to prove his knowledge of the age of the victim beyond a reasonable doubt.  See Dixon v. United States, 548 U.S. 1, 23 (2006) (noting that a defendant's mens rea "is always for the prosecution to prove beyond a reasonable doubt").  Moreover, in this case, the government itself is not arguing waiver, but instead does "not object that the issue as raised was not the precise issue preserved by the conditional plea."  For these reasons, we find that Encarnación's argument is not waived.

### b. "Conclusory" argument

The dissent suggests that Encarnación waived his appellate argument for another reason.  Specifically, the dissent claims that Encarnación waived the argument that "Rosemond requires the government to prove an aider an abettor's knowledge of age as an element of the crime" because "he gave us nothing more than conclusory statements" on appeal.

We have repeatedly stated that "we deem waived claims not made or claims adverted to in a cursory fashion, unaccompanied by

developed argument."  Rodriguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011).  "We require parties to 'spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority.'"  United States v. Gray, 780 F.3d 458, 464 (1st Cir. 2015) (quoting Rodriguez, 659 F.3d at 175).

Here, Encarnación's supplemental brief argued that "a person becomes an aider and abettor if and only if the person 'actively participates in a criminal venture with full knowledge of the circumstances constituting the charged offense,' and the age of the victim is one of the circumstances that constitutes the charged offense."  Appellant's Supp. Br. at 10-11 (quoting Rosemond, 134 S. Ct. at 1248-49).  Encarnación also identified four other passages in Rosemond to support his on-point argument.  Therefore, we find the argument has been sufficiently developed and is not waived.  See Gray, 780 F.3d at 464 (finding that argument not waived where defendant cited only one case but "offered a short but on-point argument").

**2. Forfeiture**

Although Encarnación's appellate argument is not waived because it fits within the broad legal question he preserved in the plea agreement, and the government does not argue to the contrary, we also address whether his argument is forfeited because he did not raise it in the district court.  These two issues, though related, are distinct.  The first asks whether Encarnación's

-8-

argument falls within the scope of the conditional waiver provision in his plea agreement. The second asks whether Encarnación raised the argument in front of the district court judge.

When a party fails to raise an argument in the district court, we generally review the claim under the plain error standard of review. See United States v. Pagán-Ferrer, 736 F.3d 573, 593 (1st Cir. 2013). However, in this case, the government has not asked us to review Encarnación's argument for plain error and, instead, agrees to de novo review. When the government fails to request plain error review, we, and many of our sister circuits, review the claim under the standard of review that is applied when the issue is properly preserved below. See United States v. Tapia-Escalera, 356 F.3d 181, 183 (1st Cir. 2004) (declining to apply plain error review to unpreserved claim when not requested by government); see also United States v. Williams, 641 F.3d 758, 763-64 (6th Cir. 2011) (applying de novo review to unpreserved legal claim because government did not request plain error standard); United States v. Salem, 597 F.3d 877, 884 (7th Cir. 2010) (stating that government "waived its right to rely on plain error review" when it failed to request that standard of review); United States v. Kortgaard, 425 F.3d 602, 610 (9th Cir. 2005) (refusing to apply plain error standard because "[e]ven if Kortgaard failed to preserve the error below, the government nonetheless elected to address the merits of Kortgaard's challenge . . . without raising

the issue of waiver"); United States v. Cyr, 29 Fed. Appx. 1, 4 n. 3 (D.C. Cir. 2001) (choosing not to apply plain error review because government did not argue for it); but see United States v. Bain, 586 F.3d 634, 639 n.4 (8th Cir. 2009) (stating that "a party's concession on the standard of review does not bind the court"). Therefore, even if Encarnación did not sufficiently raise his appellate argument in the district court, we will review de novo the question of law posed by this case. See United States v. Carter, 752 F.3d 8, 13 (1st Cir. 2014); see also United States v. Duquette, 778 F.3d 314, 317 (1st Cir. 2015) (applying de novo review where "the government appears to have conceded that de novo reviews applies").

**B. The Supreme Court's Rosemond Decision**

Rosemond involved a "drug deal gone bad," after either the defendant (Rosemond) or his confederate (it was unclear who) fired a gun at the buyers, who had taken the drugs and run away without paying. 134 S. Ct. at 1243. Rosemond was charged with violating 18 U.S.C. § 924(c) by using a firearm in connection with a drug trafficking offense, or, in the alternative, aiding and abetting that crime under 18 U.S.C. § 2. Id.

At trial, Rosemond contended that he "took no action with respect to any firearm." Id. at 1246. More specifically, he did not buy, borrow, carry, or use a gun in connection with the alleged drug transaction. Id. Building on this factual premise, he argued

that he could be found guilty of aiding or abetting a § 924(c) violation only if he "intentionally took some action to facilitate or encourage the use of the firearm, as opposed to the predicate drug offense." Id. at 1244 (internal quotation marks omitted). Disagreeing, the district court instructed the jury that Rosemond was guilty of aiding and abetting if "(1) [he] knew his cohort used a firearm in the drug trafficking crime, and (2) [he] knowingly and actively participated in the drug trafficking crime." Id. (internal quotation marks omitted). Rosemond was convicted by the jury, and the Tenth Circuit affirmed.[5] Id. at 1244.

The Supreme Court vacated Rosemond's § 924(c) conviction. Id. at 1252. The Court first restated longstanding aiding and abetting law: "[A] person is liable under § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." Id. at 1245. Regarding the affirmative act requirement, the Supreme Court concluded that the district court correctly instructed the jury that Rosemond could be

_____

[5] The jury's verdict form was general and "did not reveal whether the jury found that Rosemond himself had used the gun or instead had aided and abetted a confederate's use during the marijuana deal." Rosemond, 134 S. Ct. at 1244. Even if the jury could have found that Rosemond himself fired the gun, the Tenth Circuit and the Supreme Court had to address his aiding and abetting argument because "a conviction based on a general verdict is subject to challenge if the jury was instructed on alternative theories of guilt and may have relied on an invalid one." Id. at 1244 n.2 (internal quotation marks omitted).

convicted of aiding and abetting a § 924(c) offense even if he facilitated only the drug trafficking element, and not the use of the gun. Id. at 1247; see also id. at 1246 ("[A] defendant can be convicted as an aider and abettor without proof that he participated in each and every element of the offense." (internal quotation marks omitted)).

Regarding the intent requirement, the Court stated that a person must intend to facilitate "the specific and entire crime charged." Id. at 1248; see also id. ("[A]n aiding and abetting conviction requires . . . a state of mind extending to the entire crime." (emphasis added)). Therefore, with a § 924(c) offense, the aider and abettor must have knowledge of the full scope of the crime, that is, "that the plan calls not just for a drug sale, but for an armed one." Id. at 1249; see also id. (stating that a defendant must intend to commit "the illegal scheme in its entirety — including its use of a firearm").

The Court further held that this knowledge has to be "advance knowledge," meaning "knowledge at a time the accomplice can do something with it — most notably, opt to walk away." Id. at 1249-50. The jury instructions at Rosemond's trial were in error because they did not require that Rosemond knew in advance that one of his cohorts would be armed. See id. at 1251. By instructing the jurors to consider merely whether Rosemond "knew his cohort used a firearm," the district court failed to direct them to

determine when Rosemond obtained the requisite knowledge — i.e., to decide whether Rosemond knew about the gun in sufficient time to withdraw from the crime.  Id. at 1251-52.

## C. Application of Rosemond to Encarnación

The application of Rosemond to the charge in this case is relatively straightforward.  The prosecution charged Encarnación with aiding and abetting Vilanova in the production of child pornography in violation of 18 U.S.C. § 2251(a) and 18 U.S.C. § 2. An individual violates § 2251(a) if he "employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . using materials that have been mailed, shipped, and transported in or affecting interstate or foreign commerce." (emphasis added).  Under Rosemond, to establish the mens rea required to aid and abet a crime, the government must prove that the defendant participated with advance knowledge of the elements that constitute the charged offense.  See 134 S. Ct. at 1248-49; see also id. (stating that an aider and abettor must have "full awareness of [the crime's] scope," "full knowledge of the circumstances constituting the charged offense," and "participate[] in a criminal scheme knowing its extent and character"); United States v. Diaz-Castro, 752 F.3d 101, 107 n.4 (1st Cir. 2014) (stating that Rosemond clarified that a defendant needs "advance

-13-

knowledge" of the elements of an offense to be convicted as an aider and abettor).

Producing child pornography is illegal precisely because the person in the visual depiction was a minor. If an individual charged as an aider and abettor is unaware that the victim was underage, he cannot "wish[] to bring about" such criminal conduct and "seek . . . to make it succeed." Rosemond, 134 S. Ct. at 1248 (quoting Nye & Nissen v. United States, 336 U.S. 613, 619 (1949)). Therefore, under Rosemond, an aider and abettor of such an offense must have known the victim was a minor when it was still possible to decline to participate in the conduct.

**D. Arguments Against the Applicability of Rosemond**

While accepting, as it must, the principles of aider and abettor liability set forth in Rosemond, the government argues that Rosemond is not applicable to a charge of aiding and abetting the production of child pornography for two reasons: (1) 18 U.S.C. § 2251(a) does not contain a knowledge requirement for principals or aiders and abettors, and (2) Rosemond's analysis applies only to offenses with two distinct actions. The dissent adds that we can avoid the Rosemond issue because, in its view, Encarnación pleaded guilty as both a principal and an aider and abettor, and, hence, we can affirm his conviction as a principal. In the alternative, the dissent argues that, on the facts of this case, Rosemond does not

-14-

require Encarnación to have advance knowledge that the victim was a minor to be convicted.  We address each argument in turn.

### 1. Principal vs. Aider And Abettor

The government is correct that § 2251(a) itself contains no mens rea requirement as to the victim's age, and the majority of courts that have addressed the issue have held that knowledge of the age of the victim is not required to convict a principal under the statute.  See, e.g., United States v. Fletcher, 634 F.3d 395, 400 (7th Cir. 2011); United States v. Pliego, 578 F.3d 938, 943-44 (8th Cir. 2009); United States v. Malloy, 568 F.3d 166, 172-73 (4th Cir. 2009); United States v. Deverso, 518 F.3d 1250, 1257 (11th Cir. 2008); United States v. Griffith, 284 F.3d 338, 349 (2d Cir. 2002); see also United States v. X-Citement Video, Inc., 513 U.S. 64, 77 (1994) (stating that Congress intended to exclude a scienter requirement from § 2251(a)); but see United States v. U.S. Dist. Court, 858 F.2d 534, 538-43 (9th Cir. 1988) (holding that while "[t]he defendant's awareness of the subject's minority is not an element of [a § 2251(a)] offense," the First Amendment requires reading a reasonable mistake of age affirmative defense into the statute).

However, even assuming that a principal of a § 2251(a) offense can be held strictly liable (that is, convicted without

-15-

knowing that the victim was a minor),[6] the government's argument that an aider and abettor must also be held liable without fault has been rejected by longstanding law.[7]  See 2 LaFave § 13.2(f) ("Under the general principles applicable to accomplice liability, there is no such thing as liability without fault.").

In other contexts, courts have consistently found a mens rea requirement for aiders and abettors of strict liability crimes. See, e.g., United States v. Lawson, 872 F.2d 179, 181 (6th Cir. 1989) (upholding conviction after finding that aider and abettor

_____

[6] Again, we make no judgment here on that proposition. Because the dissent argues that Encarnación pleaded guilty as a principal, it chooses to address the question of whether a principal of a § 2251(a) offense can raise a mistake of age defense and concludes that a principal cannot raise such a defense. However, that issue is not even in dispute in this appeal. Encarnación concedes that a principal is not entitled to a mistake of age defense. See Appellant's Supp. Br. at 3 n.1 (stating that Encarnación "has always argued that [he] was entitled to knowledge evidence as an aider and abettor while the principal was not").

[7] The dissent similarly argues that because the offense in Rosemond was not a strict liability crime, it does not support our conclusion that an aider and abettor of the production of child pornography must have knowledge that the victim was a minor even if the principal does not require such knowledge.  The dissent claims that "the takeaway from Rosemond is that an aider and abettor must have the same amount of knowledge as does the principal about the scope of the contemplated crime."  However, Rosemond never makes such a claim.  Instead, the Supreme Court recognized that the mens rea requirement for aiders and abettors may be different from that of principals of the underlying offense.  See 134 S. Ct. at 1251 n.10 (noting that Rosemond's holding "is grounded in the distinctive intent standard for aiding and abetting someone else's act").  Therefore, even when there is no knowledge requirement for a principal, the government still must prove that an aider and abettor intended to facilitate "the specific and entire crime charged."  Id. at 1248.

-16-

"knew that [principal's] possession of the unregistered guns would be illegal" under 26 U.S.C. § 5861(c)); <u>United States</u> v. <u>Baumgarten</u>, 517 F.2d 1020, 1027 (8th Cir. 1975) (stating that aider and abettor of 26 U.S.C. § 5861 offenses must have a "purposeful attitude" to be found guilty (internal quotation marks omitted)); <u>State</u> v. <u>Bowman</u>, 656 S.E.2d 638, 651 (N.C. Ct. App. 2008) (holding that government must prove that aider and abettor of statutory rape "acted with knowledge that the [victims] were under the age of sixteen"); <u>id.</u> at 650 ("Although statutory rape is a strict liability crime, aiding and abetting statutory rape is not.") (citing <u>People</u> v. <u>Wood</u>, 56 Cal. App. 431, 205 P. 698 (1922)).

Professor LaFave explains that in the situation where an "alleged accomplice is aiding another with intent to do so, but the aid is given without knowledge of the facts which make the principal's conduct a crime," the argument that the "accomplice may be held on a liability-without-fault basis if the crime committed by the principal is of the strict liability variety . . . has been rejected [and] is not sound." 2 LaFave § 13.2(f). LaFave adds,"the special circumstances which justify the imposition of liability without fault on certain persons who themselves engage in the proscribed conduct are not likely to exist as to those rendering aid." <u>Id.</u>

LaFave's analysis is directly applicable to the § 2251(a) charge in this case. Encarnación admits that he aided Vilanova in

producing pornography, but his aid was given without knowledge of the only fact which makes Vilanova's conduct a crime, namely that one of the participants was a minor.[8] Criminalizing non-obscene adult pornography would violate the Constitution's right to free speech. See Ashcroft v. Free Speech Coal., 535 U.S. 234, 240 (2002); United States v. Hilton, 386 F.3d 13, 14 (1st Cir. 2004).

If the government's argument were correct, individuals could be convicted of aiding and abetting the production of child pornography even when they had only a fleeting connection to the crime. For example, a set decorator who believes he is working on the production of a legal adult pornographic film could be held liable as an aider and abettor even if he had no knowledge that one of the participants in the film was underage. This outcome would be possible, because, as Rosemond explains, a "defendant can be convicted as an aider and abettor without proof that he participated in each and every element of the offense . . . even if that aid relates to only one (or some) of a crime's phases or elements." 134 S. Ct. at 1246. Therefore, as long as the set

---

[8] As the dissent points out, LaFave acknowledges that, in "the situation where the crime is not totally of a strict liability type, but no awareness is required as to some attendant circumstance to convict either the principal or the accomplice" then no mens rea may be required to convict both the principal and aider and abettor as to that "attendant circumstance." 2 LaFave § 13.2(f). The "attendant circumstance" exception does not apply to this case. As stated above, the element that the victim was a minor is not simply an "attendant circumstance" of a § 2251(a) charge. It is the reason why producing child pornography is illegal.

-18-

decorator participated in any aspect of producing the child pornography, he would meet aiding and abetting's affirmative act requirement.

Principals, the argument goes, "may be convicted under § 2251(a) without proof they had knowledge of [the victim's] age" because they "confront[] the underage victim personally and may reasonably be required to ascertain that victim's age." X-Citement Video, Inc., 513 U.S. at 76 n.5, 72 n.2. The same justification would not apply to a set decorator or other similarly situated aider and abettor, who may never even see the victim, much less interact with him or her.

To be sure, in this case, the government alleges that Encarnación had a previous relationship with KMV, including repeated sexual activity, and, as a main actor in the film, saw her face-to-face. At this juncture, however, these alleged facts are irrelevant. The government decided to proceed against Encarnación as an aider and abettor, even though it arguably would have been justified charging him as a principal. As we just discussed, this decision meant the government had to prove Encarnación knew the victim's age in advance. That the evidence strongly points to such knowledge means nothing until the government convinces a jury — not us — of this fact.

## 2. Double-barreled Crime

The government also contends that <u>Rosemond</u> is distinguishable, and thus inapplicable here, because "it dealt with a statute which requires two distinct actions."  The statute at issue in <u>Rosemond</u>, 18 U.S.C. § 924(c), is a "double-barreled crime," requiring (1) using or carrying a gun while (2) engaging in a violent or drug trafficking offense.  <u>See</u> 134 S. Ct. at 1245.

However, nothing about the Supreme Court's mens rea analysis limits its applicability to statutes requiring two distinct actions.  When discussing the mens rea requirement for aiding and abetting liability, the Court states generally that the requirement is satisfied "when a person actively participates in a criminal venture with full knowledge of the circumstances constituting the charged offense."  <u>Id.</u> at 1248-49.  The Court then explains that it has previously employed this knowledge requirement in a variety of contexts, including aider and abettor liability for mail fraud and the evasion of liquor taxes.  <u>Id.</u> at 1249.  Two distinct actions are not required to convict a defendant under either the mail fraud or the evasion of liquor taxes statutes.  <u>See</u> 18 U.S.C. § 1341 (proscribing, inter alia, the mailing of a letter for the purpose of executing a scheme to defraud); 26 U.S.C. § 5602 (proscribing the operation of a distilling business to defraud the government of liquor taxes).  Finally, the Court applies this "same principle" — that an aider and abettor must "participate[] in a

-20-

criminal scheme knowing its extent and character" — to a § 924(c) offense.  Id.  That general principle is not limited to double-barreled crimes.  See also United States v. Goldtooth, 754 F.3d 763, 768 (9th Cir. 2014) (applying Rosemond's mens rea analysis to the charge of aiding and abetting robbery on an Indian reservation).

### 3. The Dissent's Arguments

#### a. Pleading Guilty as a Principal and an Aider and Abettor

The dissent contends that Rosemond is not applicable to this case because Encarnación pleaded guilty as both a principal and as an aider and abettor, and, thus, we can affirm his conviction as a principal without addressing whether the government must prove that an aider and abettor of a § 2251(a) offense knew that the victim was a minor.  According to the dissent, because the indictment charged Encarnación and Vilanova with "aiding and abetting each other," and Encarnación never indicated at his change of plea hearing that he was pleading guilty as an aider and abettor only, he must have pleaded guilty as both a principal and as an aider and abettor.[9]

---

[9] Neither party has raised the issues presented by the dissent, and we have received no briefing on them.  Yet, the dissent "would leave for another day" the Rosemond issue, claiming that it was not "squarely raised and . . . fully fleshed out in the parties' briefs."  In fact, however, we explicitly requested, and received, supplemental briefing from the parties regarding how Rosemond affects this case.

The dissent is incorrect for a number of reasons. First, the dissent argues that when an indictment charges two defendants with "aiding and abetting each other," the government always charges them both as aiders and abettors and as principals. We, however, have not definitively determined that issue. In some instances, we have treated this language as the dissent proposes to do in this case. See, e.g., United States v. Hilario-Hilario, 529 F.3d 65, 69 (1st Cir. 2008); United States v. Matos-Quinones, 456 F.3d 14, 20 (1st Cir. 2006); Ramirez-Burgos v. United States, 313 F.3d 23, 31 (1st Cir. 2002). In other instances, where the nature of the charges was unquestioned by the parties, we have treated this language as indicting the defendant only as an aider and abettor. See, e.g., United States v. Downs-Moses, 329 F.3d 253, 259, 261 (1st Cir. 2003); United States v. Ramirez, 884 F.2d 1524, 1525, 1532 (1st Cir. 1989); United States v. Bonfant, 851 F.2d 12, 13, 15 (1st Cir. 1988). Importantly, in this case, neither party questions that Encarnación was only charged as an aider and abettor. Therefore, we do not need to reach the question of whether the "aiding and abetting each other" language always charges a defendant as both an aider and abettor and as a principal.[10]

---

[10] The dissent claims that Hilario "decided the very question before us" that the "aiding and abetting each other" language always indicts a defendant both ways. However, the defendants in Hilario were not even indicted under the general aiding and abetting statute, 18 U.S.C. § 2, utilized in this case. See 529

Second, even assuming that the indictment charged Encarnación as both an aider and abettor and as a principal, neither the record nor our case law supports the dissent's conclusion that Encarnación pleaded guilty both as a principal and as an aider and abettor. As the dissent acknowledges, in his written plea agreement, Encarnación only admitted to appearing in a video showing him **"aiding and abetting another co-defendant** . . . engaging in sexually explicit conduct with the minor 'KMV.'" Plea Agreement at 13 (emphasis added); see also id. (stating that Encarnación, "while aiding and abetting others charged in the Superseding Indictment, did . . . coerce a female minor . . . to engage in sexually explicit conduct") (emphasis added). Nothing in

F.3d at 69, 75. Instead, they were charged "with both the central offense of smuggling an alien into the United States or attempting to do so, 8 U.S.C. § 1324(a)(1)(A)(i)(2000), and the separately enumerated offense of aiding and abetting such an offense, id. § 1324(a)(1)(A)(v)(II)." Id. at 69. The court recognized that the aiding and abetting the smuggling of an alien statute was "unusual" because, unlike 18 U.S.C. § 2, it called for a lower statutory maximum sentence for an aider and abettor than for a principal. Id. at 75 & n.2. Thus, the court never addressed the question of whether defendants charged with "aiding and abetting each other" under 18 U.S.C. § 2--like Encarnación--are always indicted as both principals and aiders and abettors. Moreover, the parties in Hilario did not question the court's interpretation that the indictment charged the defendants as both principals and aiders and abettors. See id. at 69, 75. That situation is the opposite of this case, where the parties agree that Encarnación was only charged as an aider and abettor.

-23-

the plea agreement indicates that Encarnación also admitted guilt as a principal.[11]

Furthermore, nothing in the change of plea hearing demonstrates that Encarnación pleaded guilty as a principal. The dissent assumes that because Encarnación acknowledged at the change of plea hearing that he was "charged with production of child pornography" and "participated in acts of a sexual nature" with a minor without referring to his role as an aider and abettor, he admitted guilt as a principal. The dissent's assumption is incorrect. An aider and abettor to the production of child pornography is also "charged with production of child pornography" (as an aider and abettor) and could also "participate[] in acts of a sexual nature" with a minor. Encarnación did not plead guilty as a principal simply because he did not explicitly acknowledge his role only as an aider and abettor during the change of plea hearing.

Additionally, on appeal, both parties agree that Encarnación was only charged as an aider and abettor. In its

_____

[11] The dissent argues that because the plea agreement made an "explicit reference to both the production of child pornography statute and the aiding and abetting statute," it "demonstrates that Encarnación admitted he acted as both a principal and an aider and abettor when he pleaded guilty." The dissent's contention has no merit. Even when a defendant pleads guilty only as an aider and abettor, his plea agreement necessarily must reference both the substantive offense statute and the aiding and abetting statute. Otherwise, the plea agreement would contain no indication of what substantive offense the aider and abettor was charged with supporting.

-24-

briefing, the government repeatedly acknowledges this fact. <u>See</u>, <u>e.g.</u>, Gov't Br. at 15 (stating that "Encarnación-Ruiz was charged as an aider and abettor"); <u>id.</u> at 17 (stating, in title of Argument section, that "Defendant Encarnación-Ruiz . . . Was Charged As An Aider And Abettor"); <u>id.</u> at 24 (referring to Encarnación "as an aider and abettor"); Gov't Supp. Br. at 3 (noting that "defendant ha[s] been charged as aider and abettor"); <u>id.</u> at 5 (noting that Encarnación "was charged under § 2251(a) only as an aider and abettor").

Despite these clear statements, the dissent claims that the government also proceeded against Encarnación as a principal because its brief quotes 18 U.S.C. § 2 and argues that Encarnación "must be punished as a principal" since he "actively assisted and participated in the substantive offense." We do not understand how quoting 18 U.S.C. § 2, universally known as "<u>the federal aiding and abetting statute</u>," <u>Rosemond</u>, 134 S. Ct. at 1243 (emphasis added), can be any indication that the government proceeded against Encarnación as a principal. Moreover, the statement that Encarnación should be "punished as a principal" provides further support that the government proceeded against him as an aider and abettor. The entire purpose of 18 U.S.C. § 2 is to punish "as a principal" those who aid and abet a crime. 18 U.S.C. § 2(a); <u>see</u> <u>Rosemond</u>, 134 S. Ct. at 1245 (noting that "§ 2 reflects a centuries-old view of culpability: that a person may be responsible

-25-

for a crime he has not personally carried out if he helps another to complete its commission").  If the government were indeed proceeding against Encarnación as a principal, it simply would have no reason to state that he "must be punished as a principal." Finally, any argument by the government that it proceeded against Encarnación as a principal would likely violate the written plea agreement because the agreed upon statement of facts incorporated into the agreement clearly states that Encarnación was "aiding and abetting another co-defendant."  Plea Agreement at 13.

The dissent contends that our decision in United States v. Grant, 114 F.3d 323 (1st Cir. 1997), stands for the proposition that "when a defendant charged with multiple counts enters an unqualified guilty plea, that defendant admits guilt as to all counts."  Because Encarnación was charged as both a principal and aider and abettor, and Encarnación entered an unqualified guilty plea, the dissent argues that he admitted guilt under both theories of liability.

In Grant, the defendant argued that "the imposition of consecutive sentences for four counts that amounted to the same offense" violated the Double Jeopardy Clause.  Id. at 328.  We rejected that argument because the defendant failed to meet his burden of showing that the indictment was facially multiplicitous. Id. at 329.  In doing so, we noted that "[a]t the plea hearing, the district court repeatedly directed Grant's attention to the fact

that he had been charged with four different crimes," and he subsequently "entered an unconditional plea on each count." Id. Grant "conceded guilt to [four] separate offenses" because he admitted "to each of the distinct factual predicates underlying the separate counts." Id.

Encarnación did not plead guilty to two separate crimes consisting of distinct factual predicates, and the government did not charge him under two separate counts. Instead, the government, at most, charged him under two alternative theories of the same crime — as an aider and abettor and as a principal — under a single count consisting of the same factual predicate, and chose to proceed against him only as an aider and abettor. See, e.g., United States v. Shea, 150 F.3d 44, 50 (1st Cir. 1998) (noting that "direct principal liability" and "aider and abettor liability" are "alternative theories of liability on [the same] charge"), abrogated on other grounds by United States v. Mojica-Baez, 229 F.3d 292 (1st Cir. 2000). Moreover, the district court never "repeatedly directed" Encarnación's attention to the fact that he had been charged both as an aider and abettor and as a principal. In fact, neither the court nor the government ever informed Encarnación that he was pleading guilty under both theories of liability, which, as explained above, have distinct mens rea requirements.

The dissent has cited no case — and we are not aware of any — which holds that when a defendant pleads guilty to a charge containing the "aiding and abetting each other" language, and there is no indication from the government or the district court at the change of plea hearing under which theory the government intends to proceed, the defendant necessarily pleads as both an aider and abettor and a principal as a matter of law. Regardless, in this case, the government clearly stated in the plea agreement that Encarnación was only "aiding and abetting another co-defendant."

The dissent's proposed outcome would raise a significant due process concern regarding whether Encarnación's plea was knowing and voluntary. A defendant "must be instructed in open court on 'the nature of the charge to which the plea is offered.'" United States v. Broce, 488 U.S. 563, 570 (1989) (quoting Fed. R. Crim. P. 11(c)(1)). A plea "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." Id. (internal quotation marks omitted). Furthermore, "the fact of voluntariness cannot be inferred by a reviewing court from a silent or otherwise inadequate record. Instead, due process requires that there be an 'affirmative showing' in the record to support that determination." United States v. Ward, 518 F.3d 75, 81 (1st Cir. 2008) (quoting Boykin v. Alabama, 395 U.S. 238, 242 (1969)) (emphasis in original).

-28-

As explained above, there is simply no affirmative showing in the record that Encarnación knew he was pleading guilty as both a principal and aider and abettor. Yet, the dissent claims that Encarnación necessarily pleaded guilty as both a principal and aider and abettor because "neither Encarnación nor the district judge indicated that he was pleading guilty as an aider and abettor only." The dissent's assertion would flip the due process inquiry on its head. Instead of requiring an affirmative showing, the dissent would infer from a silent record that Encarnación voluntarily pleaded guilty under both theories of liability.

The dissent claims that its proposed outcome would resolve this appeal "on the narrowest grounds possible" but never explains why its resolution is narrow at all. It is true that "we endeavor to avoid deciding constitutional issues and attempt to decide cases on the narrowest grounds possible." Bellville v. Town of Northboro, 375 F.3d 25, 30 (1st Cir. 2004). However, instead of resolving the case on narrow grounds, the dissent would prefer to establish an unprecedented ruling that a defendant knowingly and voluntarily pleads guilty as both an aider and abettor and a principal whenever the indictment contains the "aiding and abetting each other" language and the change of plea hearing record is silent as to which theory the government intended to pursue. This ruling, without any briefing from the parties, would in fact create constitutional due process concerns. We believe the better — and

-29-

narrower — way of deciding this case is to answer the questions presented on appeal and addressed in the supplemental briefing that we requested.

### b. The Applicability of Rosemond

If the dissent were to reach the Rosemond issue, it would still affirm Encarnación's conviction. The dissent contends that, because Encarnación admitted to engaging in sexual acts with KMV, Rosemond does not require that the government prove that he had advance knowledge that KMV was a minor to be convicted of aiding and abetting the production of child pornography. The dissent argues that "under Rosemond's principles . . . the aider and abettor only needs to know that he is assisting or facilitating the filming of sexually explicit activity," not that one of the participants was a minor, and, in this case, Encarnación obviously knew he was facilitating the filming of sexually explicit activity by appearing on camera with KMV.

The dissent's argument is unavailing. Pursuant to Rosemond, an aider and abettor must have "full awareness of [the] scope" of the crime of producing child pornography. 134 S. Ct. at 1249. If the dissent were correct, the aider and abettor would have knowledge of no crime at all, because, as mentioned above, producing non-obscene adult pornography is not a crime, and, under the First Amendment, could not be a crime. See Free Speech Coal., 535 U.S. at 234; Hilton, 386 F.3d at 14.

The dissent also argues that Rosemond is inapposite because Encarnación had a "realistic opportunity to quit the crime" before he "engaged in sexually explicit conduct with [KMV] before a camera on more than one occasion." Again, the dissent fails to recognize that engaging in sexually explicit conduct before a camera is not a crime. Encarnación argues that he believed he had sexual relations with an adult, and, therefore, had no "realistic opportunity to quit the crime" of producing child pornography because he only became aware that KMV was a minor after appearing on camera with her.

Finally, the dissent contends that Encarnación is not entitled to a "mistake of age" defense because he was a "present, participating aider and abettor" and not a "non-present, non-participant" one. This argument is also unavailing. Federal aiding and abetting law makes no distinction between "present" and "non-present" aiders and abettors.[12] See 18 U.S.C. § 2; United

---

[12] The dissent's argument echoes the Massachusetts Appeals Court's decision in Commonwealth v. Harris, 904 N.E.2d 478 (Mass. App. Ct. 2009). Harris concluded that knowledge of the victim's age is not necessary to convict a "present" joint venturer — Massachusetts' term for an accomplice — of statutory rape. Harris is inapposite here because its holding is based on the unique nature of joint venture liability under Massachusetts law. In Massachusetts, the government can proceed against a joint venturer under two distinct theories: a "presence" theory and a "nonpresence" theory. Id. at 484-85. The court held that only under a "presence" theory is knowledge of the victim's age not required because a "present" joint venturer "has the same opportunity as the principal to make judgments about age from the child's appearance and other circumstances attending the encounter between the child and the principal." Id. at 485. In doing so,

-31-

States v. George, 761 F.3d 42, 52 (1st Cir. 2014) (noting that a "culpable aider and abetter need not perform the substantive offense, be present when it is performed, or be aware of the details of its execution" (internal quotation marks omitted)). Under Rosemond, the government has the burden to prove an aider and abettor to a § 2251(a) offense had advance knowledge that the victim was a minor regardless of whether that aider and abettor was a "participant" or "non-participant."[13]

_____

the court recognized that joint venturer liability is different from aiding and abetting liability found in the federal statute, 18 U.S.C. § 2, in part because it does not distinguish between "present" and "nonpresent" accomplices. See id. at 484-85 & n.4.

[13] At times, Encarnación has mischaracterized his appeal as requesting a "mistake of age" affirmative defense, which Encarnación would have the burden to prove. See Dixon, 548 U.S. at 8. Because proof of knowledge that the victim was a minor is, pursuant to Rosemond, necessary to satisfy the mens rea element for aiding and abetting the production of child pornography, it must be proven by the government beyond a reasonable doubt — as with all elements of a crime. See In re Winship, 397 U.S. 358, 364 (1970); cf. Rosemond, 134 S. Ct. at 1254 (Alito, J., concurring in part and dissenting in part)(asserting that the majority has "convert[ed] what has up to now been an affirmative defense into a part of the required mens rea," "plac[ing] a strange and difficult burden on the prosecution").

For this reason, the dissent is mistaken to rely on cases recognizing that a defendant is entitled to a jury instruction on an affirmative defense only when the evidence supports that defense. See, e.g., Mathews v. United States, 485 U.S. 58, 63 (1988); United States v. Lopez-Lopez, 282 F.3d 1, 18 (1st Cir. 2002). Because the burden of proof is on the government to establish that an aider and abettor knew the victim was a minor, Encarnación has no need to raise an affirmative defense on this issue.

-32-

**IV.**

Encarnación's guilty plea was conditioned on his request to argue at trial that he did not know that KMV was a minor, a request that the district court rejected. Adhering to <u>Rosemond</u>'s analysis of aiding and abetting mens rea, we now hold that the government must prove beyond a reasonable doubt that Encarnación knew that the victim was a minor to support its charge that he participated in the production of child pornography. In so holding, we in no way condone the repugnant conduct that Encarnación is accused of committing and recognize that "[c]hild pornography harms and debases the most defenseless of our citizens." <u>United States</u> v. <u>Williams</u>, 553 U.S. 285, 307 (2008). However, we are bound to follow the dictates of the Supreme Court and well-established principles of aiding and abetting liability. We <u>vacate</u> Encarnación's conviction and <u>remand</u> for proceedings consistent with this decision.

<u>So ordered.</u>

**– Dissenting Opinion Follows –**

**THOMPSON, Circuit Judge, dissenting.** Encarnación-Ruiz ("Encarnación") admits that he is shown on camera engaging in sexually explicit acts with a minor on at least two separate occasions, one of which involved him being filmed having sex with her. And should he prevail on his appeal, Encarnación, at least initially, sought only to go to trial armed with a mistake of age affirmative defense. Specifically, he wanted to be able to tell the jury that he thought the girl was eighteen when he had sex with her before the camera.

The majority believes this case requires us to decide whether the fairly-newly-minted United States v. Rosemond applies to Encarnación's "claim that the government has to prove beyond a reasonable doubt that an aider and abettor to a production of child pornography charge knew that the victim was a minor." But we do not need to reach Rosemond to dispose of Encarnación's appeal. The uncontested facts of this case, combined with our binding precedents, demonstrate that he pleaded guilty not only as an aider and abettor, but also as a principal.

Sometimes, it may do no harm to go beyond the narrowest grounds strictly necessary to decide a particular case. Here, however, the majority declares that Rosemond puts the burden on the government to prove that an aider and abettor of the production of child pornography, unlike the principal offender and regardless of the nature of the aider and abettor's involvement in the

production, knew that the victim was a minor.  The majority's reasoning results in what, in my view, is a truly odd outcome:  by requiring the government to prove Encarnación knew his victim was a minor, it is now more difficult for the government to convict the so-called "actor" who, knowing he was being filmed, actually had sex with the minor, than the man who stood by and held the camera. I am not convinced <u>Rosemond</u> requires this result on these facts.

I respectfully dissent.

## I.  BACKGROUND

The relevant facts are undisputed.  The unobjected-to portions of the presentence report[14] establish the following details.

Sometime during April or May of 2010, then-31-year-old schoolteacher Encarnación had sex with a 14-year-old girl, "KMV," at the apartment of Rey Vilanova-Delgado ("Vilanova") in the Villa

---

[14] It is appropriate to set forth relevant facts laid out in the presentence report as this appeal follows a guilty plea, at sentencing Encarnación's counsel admitted that he was "not challenging" the statements of fact in the presentence report and "has accepted responsibility" for his actions, Sentencing Tr. at 3-4, and because "it is settled beyond hope of contradiction that unobjected-to '[f]acts contained in a presentence report ordinarily are considered reliable evidence for sentencing purposes,'" <u>United States</u> v. <u>Fernandez-Cabrera</u>, 625 F.3d 48, 54 (1st Cir. 2010) (bracketed text in original) (quoting <u>United States</u> v. <u>Morillo</u>, 8 F.3d 864, 872-73 (1st Cir. 1993)); <u>see also</u> <u>United States</u> v. <u>Velazquez</u>, 777 F.3d 91, 93 (1st Cir. 2015) ("Since the appellant's sentence followed a guilty plea, we glean the facts from the plea agreement, the change-of-plea colloquy, the unchallenged portion of the presentence investigation report . . . , and the transcript of the disposition hearing.").

Espana Housing Project.  Vilanova stood by with a videocamera, recording.  On another occasion Encarnación, Vilanova, and at least one other man engaged in sex acts with KMV while a fourth man filmed them.  Encarnación knew that KMV lived in an apartment on the first floor of Vilanova's building, and that KMV lived with her mother, brothers, and sister.

When these activities caught law enforcement's eye, the police recovered multiple videos depicting KMV engaging in various sex acts.  One video showed "KMV engaging in sexual intercourse with Roberto Encarnación and in the presence of Rey Vilanova-Delgado."  Two other videos depicted Encarnación "fondling the minor's breast, hugging her and kissing her intensely," all while KMV was "wearing her school uniform."

Encarnación and Vilanova (along with several other men not relevant to this appeal) found themselves facing a charge of "aiding and abetting each other" in the production of child pornography.

The specific count involving Encarnación (Count III) alleged that he and Vilanova,

> [f]rom in or about April 2010 through to in or about May 2010 . . . <u>while aiding and abetting each other</u>, <u>did employ, use, persuade, induce, entice, or coerce</u> a female minor, identified by the initials "K.M.V[.]"[,] to engage in sexually explicit conduct, namely the lascivious exhibition of the genital areas and performing sexual acts, <u>for the purpose of producing a visual depiction of such conduct</u>,

that is, video images . . . [a]ll in violation of Title 18 [U.S.C. §§] 2251(a) and 2.

Indictment, Count III (emphases added).

18 U.S.C. § 2251(a) provides, in pertinent part, that "[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished."  The other statute mentioned in the indictment, the aiding and abetting statute, states simply that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."  18 U.S.C. § 2(a).

After a period of negotiation, Encarnación entered into a written plea agreement whereby he agreed to plead guilty to the charges set forth in Count III.  See Plea Agreement at 1.  The agreement proceeded to set forth the language of Count III verbatim, including its statement that all of the acts charged were in violation of both 18 U.S.C. § 2251(a) and 18 U.S.C. § 2.  Id. at 1-2 ("All in violation of Title 18, United States Code, Section 2251(a) and 2.").

Through the agreement, Encarnación acknowledged the accuracy of the facts set forth in the appended Government's Version of Facts.  Id. at 9.  This stated, in part, that Encarnación,

> while aiding and abetting others charged in
> the Superseding Indictment, <u>did employ, use,
> persuade, induce, entice or coerce</u> [KMV] . . .
> to engage in sexually explicit conduct, namely
> the lascivious exhibition of the genital areas
> and performing sexual acts, <u>for the purpose of
> producing a visual depiction of such conduct</u>
> . . . .

<u>Id.</u> at 13 (emphases added).  Encarnación also conceded that he appeared in a video "aiding and abetting another co-defendant . . . engaging in sexually explicit conduct with the minor 'KMV.'"  <u>Id.</u> At his change of plea hearing, Encarnación explicitly admitted that he "participated" in sexual activities with KMV, that those activities were recorded, and that "child pornography in a technical sense was produced."  Change of Plea Tr. at 25. Encarnación further agreed that he and his codefendant "induced" or "enticed" the victim to engage in the sexual activity.  <u>Id.</u>

Although Encarnación agreed to waive most of his appeal rights as part of his plea agreement, he specifically reserved the right to seek review of "whether the defendant's mistake of age of the victim can be raised as a defense to a charge of <u>production of child pornography</u> under [18 U.S.C. §] 2251(a)."  <u>Id.</u> at 10 (emphasis added).[15]  This appeal, raising that issue, followed his sentencing.

---

[15] Notably, Encarnación's Plea Agreement did not explicitly reserve the right to argue on appeal that one charged with violating 18 U.S.C. § 2251(a) as an aider and abettor is entitled to raise a reasonable mistake of age defense.

## II. DISCUSSION

It hardly needs saying that "[c]hild pornography harms and debases the most defenseless of our citizens." United States v. Williams, 553 U.S. 285, 307 (2008). Accordingly, preventing "sexual exploitation and abuse of children constitutes a government objective of surpassing importance." New York v. Ferber, 458 U.S. 747, 757 (1982). Production of child pornography is especially pernicious because it creates "'a permanent record' of the depicted child's abuse." Paroline v. United States, 134 S. Ct. 1710, 1717 (2014) (quoting Ferber, 458 U.S. at 759). "In enacting U.S.C. § 2251, 'Congress intended a broad ban on the production of child pornography and aimed to prohibit the varied means by which an individual might actively create it.'" Ortiz-Graulau v. United States, 756 F.3d 12, 19 (1st Cir. 2014) (quoting United States v. Poulin, 631 F.3d 17, 23 (1st Cir. 2011)); see also United States v. Fletcher, 634 F.3d 395, 403 (7th Cir. 2011) ("Even more than the passive viewer of child pornography, the creator of such material not only contributes to but is directly responsible for the exploitation of the child victim.").

Congressional intent, along with the important policy considerations embodied in 18 U.S.C. § 2251, must be borne firmly in mind when addressing Encarnación's arguments. After all, Encarnación admitted that he actively participated in the filming of sexual acts with a minor.

-39-

## 1. The Nature of the Charges

In my opinion, the majority's analysis first goes astray when it accepts the premise that Encarnación pleaded guilty as an aider and abettor only. This, however, is incorrect.

First, I note that the Supreme Court says "[a] single offense should normally be charged in one count rather than several, even if different means of committing the offense are alleged." Sanabria v. United States, 437 U.S. 54, 66 n.20 (1978) (citing Fed. R. Crim. P. 7(c)(1)). And as the majority recognizes, we have said that principal and aider and abettor liability are simply two alternative theories of liability with respect to the substantive crime. See United States v. Shea, 150 F.3d 44, 50 (1st Cir. 1998), abrogated on other grounds by United States v. Mojica-Baez, 229 F.3d 292 (1st Cir. 2000). In fact, when it comes to aiding and abetting, the government does not even necessarily have to set that theory forth in the charging document. See United States v. Sanchez, 917 F.2d 607, 611 (1st Cir. 1990) ("Aiding and abetting is an alternative charge in every . . . count, whether explicit or implicit. A defendant can be convicted of aiding and abetting the commission of a substantive offense upon a proper demonstration of proof so long as no unfair surprise results.") (internal citations and quotation marks omitted, omission in original); see also United States v. Vázquez-Castro, 640 F.3d 19, 25 (1st Cir. 2011) (reiterating our holding in Sanchez that

-40-

"'[a]iding and abetting is an alternative charge in every count, whether explicit or implicit.'" (alteration in original) (quoting Sanchez, 917 F.2d at 611)).

Thus, although Encarnación was charged in a single count with the substantive offense of production of child pornography, that one count charged him with criminal liability for its production as a principal, an aider and abettor, or both. It is against this backdrop that I consider the language set forth in Count III.

Encarnación and Vilanova were charged with "aiding and abetting each other" to "employ, use, persuade, induce, entice or coerce a female minor . . . to engage in sexually explicit conduct . . . for the purpose of producing a visual depiction of such conduct, . . . [a]ll in violation of [18 U.S.C. §§] 2251(a) and 2." The critical language here is the phrase "aiding and abetting each other," combined with the allegation that Encarnación himself "did employ, use, persuade, induce, entice, or coerce a female minor . . . to engage in sexually explicit conduct . . . for the purpose of creating a visual depiction of such conduct." The majority, though, casually dismisses and declines to give effect to our previous cases deciding that this language charges a defendant as both a principal and an aider and abettor.[16] See United States v.

_____

[16] Indeed, the majority claims that we "have not definitively determined" what "aiding and abetting each other" means in an indictment. Majority Op. at 22. The problem with this position,

-41-

Hilario-Hilario, 529 F.3d 65, 69 (1st Cir. 2008) ("Hilario");
United States v. Matos-Quinones, 456 F.3d 14, 19-20 (1st Cir.
2006); Ramirez-Burgos v. United States, 313 F.3d 23, 31 (1st Cir.
2002).

Hilario is directly on point and controls the outcome
here.[17]  The defendants in Hilario, a case involving alien
smuggling, were charged by way of an indictment "alleging that
'aiding and abetting each other' the defendants 'did knowingly,
willfully and intentionally bring and attempt to bring to the
United States . . . approximately [87] aliens.'"  529 F.3d at 69
(emphasis added).  In discussing the nature of the charges set
forth in that indictment, we explained that, "[f]airly read, this
formulation, although jumbled, charged each defendant with both the
central offense of smuggling an alien into the United States or

---

however, is that (and as we shall see) the issue has in fact been
resolved for us by prior panels.  All we need to do is apply the
precedent to the facts at hand.  And I do nothing more than this.

[17] The majority relies on three of our cases to support its
view that sometimes we have treated similar language in the
indictment "as indicting the defendant only as an aider and
abettor." Majority Op. at 22.  None of these cases, however, gives
any indication that any of the issues on appeal turned on whether
or not a particular defendant had been charged and/or convicted as
a principal or an aider and abettor.  Having reviewed the cases, it
would be more accurate to say that in each one we assumed, without
deciding, that the defendant was charged and convicted on an aiding
and abetting theory only.
    Moreover, those cases did not set forth the full text of the
charge, so we cannot even compare the language.  And nothing in
them is in direct conflict with Hilario or calls its holding into
question.

attempting to do so . . . and the separately enumerated offense of aiding and abetting such an offense."[18]  Id.

The distinction between liability as a principal and liability as an aider and abettor made a difference in Hilario-- "[o]ne who aids and abets is normally liable as a principal, 18 U.S.C. § 2 (2000), but the [alien] smuggling statute prescribes in certain cases a lower sentence for mere aiders and abettors."  Id. That statute specifically provided that a defendant "convicted of smuggling an alien is subject to a ten-year maximum, but--quite unusually--one convicted solely of aiding or abetting can be imprisoned for no more than five years."  Id. at 75 (internal citations omitted).[19]  We commented on the unusual nature of this punishment scheme because it stood in contrast to "[t]he ordinary rule," which, "in the absence of such a distinction in the substantive statute, is that an aider and abettor is treated as a

_____

[18] Each clause--"aiding and abetting each other" and "did . . . bring"--describes contemporaneous actions.  Hilario's holding recognizes and gives effect to the plain meaning and grammatical construction of the indictment's language.

[19] The majority distinguishes Hilario on the grounds that the case dealt with the alien smuggling statute, 8 U.S.C. § 1324, not the aiding and abetting statute, 18 U.S.C. § 2.  The alien smuggling statute defines in different sections "the central offense of smuggling an alien into the United States or attempting to do so, 8 U.S.C. § 1324(a)(1)(A)(i) (2000), and the separately enumerated offense of aiding and abetting such an offense, id. § 1324(a)(1)(A)(v)(II)."  Hilario, 529 F.3d at 69.  Because we are only talking about the effect of certain charging language--"aiding and abetting each other"--present both here and in Hilario, I see the majority as enshrining an analytical distinction without a difference.

principal, 18 U.S.C. § 2, and is punishable accordingly." Id. at 75 n.2. We then quoted a case out of the Third Circuit for the proposition that an "aider and abettor is a principal and can be punished as such." Id. (quoting United States v. Bryan, 483 F.2d 88, 95 (3d Cir. 1973)).

Because both theories of liability were in play, the "district court gave instructions to the jury covering both smuggling and aiding and abetting that offense, and asked whether each defendant was guilty or not guilty '[a]s to count one of the indictment.'" Id. at 75 (alteration in original). The court, however, "did not ask the jury to determine whether each defendant was guilty of smuggling or merely aiding and abetting." Id. Although the jury made a special finding with respect to four of the defendants that subjected them to a prison sentence lasting "any term of years or for life," it did not make that finding with respect to a fifth defendant. Id. Accordingly, that defendant was subject to a ten-year maximum sentence if a principal, but only five years if an aider and abettor. Id.

When considering that defendant's challenge to his sentence, we determined that the district court erroneously gave him a ten-year sentence because it could not be said "from the jury verdict that [this defendant] was convicted of smuggling (rather than aiding and abetting)." Id. at 76. As a result of the

ambiguity, we ordered the defendant to be re-sentenced, with a maximum term of five years in jail. Id. at 76-77.

Thus, our analysis and ultimate resolution of the issue in Hilario further shows that the indictment charged the defendant as both a principal and as an aider and abettor. Had it charged only one or the other, we would have had no need to attempt to determine the theory of conviction from the jury's verdict. It would have been enough to simply declare that he was charged as either a principal or an aider and abettor and subject to the applicable statutory maximum. That we were unable to do this demonstrates that the charging language was critical to the outcome. Hilario, having decided the very question before us, is dispositive and mandates the conclusion that Count III here charged Encarnación with both producing child pornography and with aiding and abetting the production of child pornography.

And, although Hilario is perhaps the case addressing this particular charging language most directly, it did not announce a new rule or depart from the prevailing law of our Circuit. In Matos-Quinones, we addressed an indictment charging that "aiding and abetting each other with the intent to cause death and serious bodily injury, [the defendants] did take a motor vehicle . . . from [the victim], by force and violence." Matos-Quinones, 456 F.3d at 19-20 (internal quotation marks omitted). This language, we said, "indicted both defendants as principals and as aiders and

abettors."  Id. at 20 (citing United States v. Bennett, 75 F.3d 40, 47-48 (1st Cir. 1996)).

Ramirez-Burgos, another carjacking case, is consistent with this approach as well.  The indictment charged the defendants with "aiding and abetting each other" in the carjacking, "[a]ll in violation of 18 [U.S.C. §§] 2119(2) and 2."  Ramirez-Burgos, 313 F.3d at 26.  Section 2119(2) is the carjacking statute, while § 2 is, of course, the aiding and abetting statute.  "The jury returned a verdict of guilty" on the carjacking count.  Id. at 27.  Based on the indictment's language, we pointed out that the appealing defendant had not only been "charged and convicted as a principal, but he was also charged and convicted as an aider and abettor under 18 U.S.C. § 2(a)."  Id. at 31.

Here, as in the cases just mentioned, the indictment utilizes its "aiding and abetting" and its "did employ, use, persuade, [etc.]" clauses to describe concurrent acts; aiding and abetting another, and employing, using, persuading, and so on. Indeed, the indictment even places the word, "while" before aiding and abetting, further demonstrating that the actions took place at the same time.  And the indictment does not simply say that Encarnación aided and abetted the production of child pornography. Rather, it charges that Encarnación and Vilanova aided and abetted "each other."  This last phrase, "each other," would not be needed if the government intended to charge Encarnación as an aider and

-46-

abettor only.  See, e.g., United States v. Diaz-Castro, 752 F.3d 101, 106, 107 (1st Cir. 2014) (noting that a count charging the defendant with "aiding and abetting possession of a firearm in relation to a drug trafficking crime" charged the defendant with "'aiding and abetting' the firearms crime, not direct possession of the firearm").  The addition of "each other" is, however, specifically required to charge him as a principal.[20]

Applying our well-settled precedent here, there is no doubt that the indictment charged Encarnación with production of child pornography as both a principal and an aider and abettor.

## 2.  Encarnación's Plea

The remaining question is whether Encarnación actually pleaded guilty (and was therefore convicted) as a principal, an aider and abettor, or both.  My research has not uncovered any cases in which we specifically addressed the effect of a guilty plea when a count contains multiple theories of criminal liability on a single substantive charge.  We have, however, had cause in the past to examine what happens when a defendant pleads guilty to multiple substantive offenses set forth in different counts.

---

[20] This is because the inclusion of the "each other" language charges Vilanova with aiding and abetting Encarnación in Encarnación's production of child pornography.  Because the majority says that it doesn't need to decide what the language in the indictment means, we never get to hear its view on the effect of this language.  The majority never reaches this question since, in its view, the parties do not question that Encarnación was charged as an aider and abettor only.  Respectfully, the record does not support this assertion.

The rule in our circuit is that when a defendant charged with multiple counts enters an unqualified guilty plea, that defendant admits guilt as to all counts. United States v. Grant, 114 F.3d 323, 329 (1st Cir. 1997) (quoting United States v. Broce, 488 U.S. 563, 570 (1989) ("When a criminal defendant pleads guilty, he admits not only that he committed the factual predicate underlying his conviction, but also that he committed the crime charged against him. Just as a defendant who pleads guilty to a single count admits guilt to the specified offense, so too does a defendant who pleads guilty to two counts with facial allegations of distinct offenses concede that he has committed two separate offenses." (internal quotation marks and citation omitted)). Indeed, "[b]y entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." Broce, 488 U.S. at 570.

Admittedly, Grant and Broce dealt with indictments setting forth multiple counts, while the indictment here sets forth a single count. Nevertheless, since principal liability and aider and abettor liability are nothing more than alternative ways to get to a finding of guilt on the substantive crime, see Shea, 150 F.3d at 50, by pleading guilty Encarnación admitted his guilt to the substantive charge set forth in the indictment--production of child pornography--which included theories of both principal and aiding

and abetting liability, see Hilario, 529 F.3d at 69.  In the absence of some specific delineation as to which alternative theory was being advanced by the government or pled to by the defense, Encarnación's unqualified plea admitted his guilt under either or both.  Cf. Bradshaw v. Stumpf, 545 U.S. 175, 184, 187 (2005) (applying Ohio aggravated murder statute and Ohio aiding and abetting law to conclude that the appellant, who had pleaded guilty to aggravated murder, was guilty on an aiding and abetting theory even if new evidence tended to show that his confederate actually pulled the trigger because "the precise identity of the triggerman was immaterial to Stumpf's conviction for aggravated murder").

My view, in addition to being consistent with the indictment's language and the logic espoused in Grant, Broce, and Stumpf, is in accordance with the record surrounding Encarnación's plea.  Looking first at the Plea Agreement itself, and contrary to the majority's view, nothing there establishes that Encarnación pled to the aiding and abetting theory only.

As previously noted, the Plea Agreement states that Encarnación agreed to plead guilty to Count III.  Plea Agreement at 1.  The Agreement sets forth the complete text of that count, which charges Encarnación as both a principal and an aider and abettor, verbatim.  Id. at 1-2.  The Government's Version of Facts, which Encarnación agreed is accurate, also followed the language of the indictment, stating that Encarnación, "while aiding and abetting

others charged in the Superseding Indictment, did employ, use, persuade, induce, entice or coerce a female minor . . . to engage in sexually explicit conduct . . . for the purpose of producing a visual depiction of such conduct . . . [a]ll in violation of" 18 U.S.C. §§ 2251(a) and 2. Id. at 13 (emphases added). The use of language mirroring that of the indictment, combined with the explicit reference to both the production of child pornography statute and the aiding and abetting statute, demonstrates that Encarnación admitted he acted as both a principal and an aider and abettor when he pleaded guilty.

Furthermore, the record of Encarnación's change of plea hearing, which we may look at to determine the nature of the charges he pled to, see Hilario, 529 F.3d at 75-76 (examining the record to determine exactly that), shows that Encarnación admitted guilt to both theories. The district judge--after assuring himself of Encarnación's competency and going over the rights Encarnación would be giving up by pleading guilty--explained the charges as follows:

> The Court: In Count III, which is your situation, Mr. Encarnación, the one you are pleading guilty to, you are charged with production of child pornography here. The charge is from April to May, 2010, in Puerto Rico, you along with another individual, aiding and abetting **each other**, also employed, used, persuaded, enticed a female minor, I'm not using the word coerce because that is not the issue here in this case. There is no coercion in this case. To engage in sexually explicit conduct. Namely, the lascivious

-50-

exhibition of their genital areas and performing sexual acts for the purpose of producing visual depictions of such conduct using video camcorders, Sony video camcorders manufactured in China, and some hard drives also manufactured in Thailand, equipment also transported in interstate or foreign commerce.

That is the charge in your case, Mr. Encarnación. Do you understand that?

Defendant Encarnación: I understand.

Change of Plea Tr. at 10-11 (emphases added). The district judge also told Encarnación the following:

The Court: The Government has to prove what happened. <u>What happened was that you enticed or convinced these minors[21] to pose and to engage in sexually explicit conduct</u> by, you know, showing their genital area, engaging in sexual conduct basically, <u>to be videoed and kept in these recordings</u>, them being minors.
Do you understand that?

Defendant Encarnación: Yes.

Id. at 12-13 (emphasis added). The judge further explained, and Encarnación indicated he understood, that

the law doesn't require that you look at the Birth Certificate of these women, young women to determine the age or that they looked to be 21 or something of the sort. That's not really important. As long as they were minors, you are involved in a situation that is criminally prohibited.

Id. at 13. Encarnación responded in the affirmative when the judge asked him whether he understood that he would be "pleading to Count

---

[21] Although not relevant to Encarnación's appeal, the codefendant appearing with him at the change of plea hearing was charged in Count I and was alleged to have victimized more than one minor in his production of child pornography.

III, which is also production of child pornography." Id. at 14. And when the district judge asked Encarnación whether he wanted the judge to "go into the details, the crude details of the sexual acts that were performed," Encarnación declined. Id. at 14-15.

After going through the potential penalties attendant to a guilty plea, the district judge asked Encarnación whether he had "[a]ny doubt . . . as to the kind of crime you're pleading guilty to," and Encarnación responded, "No, there's no doubt." Id. at 19. The district judge also put on the record that, "there's also an issue that you are reserving appealing, whether in the First Circuit the mistake of age defense is a defense" to the charged crime.[22] Id. at 22.

Before accepting the guilty plea, the judge summed it all up:

> The Court: But the bottom line is <u>you indeed participated in acts of a sexual nature with minors, and they were recorded with equipment of the kind we mentioned here</u>. In other words, child pornography in a technical sense was produced. . . . That's what you did. Is that so, both of you?
>
> [Codefendant]: Yes.

---

[22] Encarnación did not take this opportunity to alert the district court to his position (expressed for the first time in this appeal) that he had been charged as an aider and abettor only, such that the reserved question was really whether one charged as an aider and abettor of the production of child pornography is entitled to a mistake of age defense. And, as noted earlier, the Plea Agreement only reserved the question of whether the defense is available to one charged generally under 18 U.S.C. § 2251(a), not one charged only as an aider and abettor. Plea Agreement at 10.

Encarnación: Yes.

Id. at 25 (emphasis added). Encarnación confirmed that he either "induced" or "enticed" KMV to participate in the recorded sexual activity, and that KMV "so happened to be less than 16." Id. at 25-26. The judge then accepted Encarnación's guilty plea. Id. at 26.

The transcript leaves no doubt that the district judge told Encarnación, more than once, that he was pleading guilty to participating in the production of child pornography by engaging in sexual activity with a minor. Notably, neither Encarnación nor the district judge indicated that he was pleading guilty as an aider and abettor only. In fact, there was no discussion whatsoever as to which legal theory the government was proceeding on. The only time the phrase "aiding and abetting" was mentioned in the context of the charges against Encarnación was when the district judge paraphrased the indictment's Count III. And even then, the judge stated that Encarnación and Vilanova were alleged to have, "aiding and abetting each other, . . . employed, used, persuaded, [or] enticed a female minor" to engage in sexually explicit conduct for the purpose of recording that conduct.

This formulation tracked the language of the indictment charging him as both a principal and an aider and abettor in the production of child pornography and was sufficient to put Encarnación on notice that, in accordance with our precedent, he

was pleading guilty both as a principal (by participating in the sexual conduct), and an aider and abettor (by performing the acts knowing that Vilanova was filming).  See Hilario, 529 F.3d at 69.

The majority is concerned that the parties have not specifically argued that Encarnación was charged and convicted as a principal in addition to an aider and abettor.  Although the government's briefing could have been more explicit, the majority's concern is not well-founded.

In its main brief, the government quoted 18 U.S.C. § 2 in full and, citing United States v. Southard, 700 F.2d 1 (1st Cir. 1983), pointed out that the statute "imposes liability on a principal or those who aid and abet the commission of a crime." Gov't Br. at 23.  This is practically a verbatim quote from Southard.  700 F.2d at 19 ("[18 U.S.C.] [s]ection 2 does not define a crime; it imposes liability on a principal or those who aid and abet the commission of a crime.").  The government then argued that Encarnación "actively assisted and participated in the substantive offense" of producing child pornography, that the recording could not have been accomplished "[w]ithout his active participation," and that, because he "engag[ed] in sexually explicit conduct with a minor he became associated with the principal's criminal endeavor and took part in it, intending to assure its success."  Gov't Br.

at 23.  From all this, the government concluded that Encarnación "must be punished as a principal."  Id.[23]

Further, although Encarnación focuses here only on the aiding and abetting portions of 18 U.S.C. § 2, the government's brief spelled out the statute--which is not limited to aiders and abettors--in full.  It explicitly provides that "[w]hoever commits an offense against the United States . . . is punishable as a principal."  18 U.S.C. § 2(a).  The concept that Encarnación is punishable as a principal because he actively participated in the crime--in other words, because he joined in and ended up committing the crime, too--was squarely presented in the government's brief.

Even more importantly, applying the uncontested facts of this case to our binding precedent leaves no doubt that Encarnación in fact admitted guilt as both a principal and an aider and abettor.  "We are, of course, free to affirm a district court's decision on any ground supported by the record even if the issue was not pleaded, tried, or otherwise referred to in the proceedings below."  Doe v. Anrig, 728 F.2d 30, 32 (1st Cir. 1984).  We should

---

[23] The government clarified its arguments in its supplemental brief, noting that its opening brief had "provided . . . a response to the issue which was actually preserved by [Encarnación]," Gov't Supp. Br. at 5, which is "whether the defendant's mistake of age of the victim can be raised as a defense to a charge of production of child pornography under" 18 U.S.C. § 2251(a), Plea Agreement at 10.  The government went on to distinguish between the issue Encarnación reserved for appeal, and his actual "concrete argument on appeal" about aiders and abettors.  Gov't Supp. Br. at 6.  Moreover, the government has never conceded that Encarnación was charged or pleaded as an aider and abettor only.

do so here because, as I will explain, Encarnación's arguments that a mistake of age defense is required fail, at least with respect to an individual charged with violating 18 U.S.C. § 2251(a) as a principal.

### 3. Availability of a Mistake of Age Defense to a Principal Charged with Violating 18 U.S.C. § 2251(a)

Having concluded that Encarnación was convicted as a principal, I now turn to the actual issue he reserved for appeal: "whether the defendant's mistake of age of the victim can be raised as a defense to a charge of production of child pornography under [18 U.S.C. §] 2251(a)." Plea Agreement at 10. Encarnación, of course, presents his appellate arguments from the perspective of an accused aider and abettor, not a principal. In light of my conclusion that the government did make the argument that Encarnación is guilty as a principal since he participated in the crime, I could take Encarnación's concession in his brief that a principal is <u>not</u> entitled to a mistake of age defense and end my analysis there.

Nevertheless, because I must ultimately address the majority's holding that the government has the burden of proving that an aider and abettor is aware of the victim's minority in an 18 U.S.C. § 2251(a) prosecution, it is logical to explore first whether--and why or why not--a mistake of age defense is available to one charged as a principal. Furthermore, the cases Encarnación cites in his briefs (other than <u>Rosemond</u>) deal with individuals

-56-

charged as principals, and he seeks to apply their reasoning to aiding and abetting cases. Accordingly, I embark on this analysis first before turning my attention to the majority's view.[24]

### i. Congressional Intent

Looking first to 18 U.S.C. § 2251(a)'s plain language, it is clear that Congress did not intend for any such defense. Had Congress intended a mistake of age defense, it would have used language requiring knowledge of the victim's age on the part of the defendant, as it did in a subsequent section criminalizing the distribution and/or receipt of child pornography. Compare 18 U.S.C. § 2251(a) with 18 U.S.C. § 2252(a) (requiring a showing that a defendant "knowingly" distributed child pornography). Congress also could have explicitly included mistake of age as an affirmative defense, as it did for a charge of sexual abuse of a minor or ward under 18 U.S.C. § 2243(c), but chose not to do so. See also 18 U.S.C. § 2252(c) (setting forth an affirmative defense for possession of child pornography). These are strong textual indications that mistake of age is not a defense to an 18 U.S.C. § 2251(a) prosecution.

The clincher though is that "in 1977 when Congress amended [18 U.S.C. §§ 2251(a) and 2252] 'the new bill retained the adverb 'knowingly' in § 2252 while simultaneously deleting the word

---

[24] Doing so also happens to address the actual issue presented before the district court and reserved for appeal.

'knowingly' from § 2251(a).'" United States v. Fletcher, 634 F.3d 395, 400 (7th Cir. 2011) (quoting United States v. X-Citement Video, Inc., 513 U.S. 64, 76 (1994)); see also United States v. Gendron, 18 F.3d 955, 960 (1st Cir. 1994) (recognizing parenthetically that Congress "dropp[ed] the word 'knowingly' from the production section of the statute [i.e., 18 U.S.C. § 2251(a)], but not from the distribution section [i.e., 18 U.S.C. § 2252]"). "This deletion was intended to reflect Congress's 'intent that it is not a necessary element of a prosecution [under § 2251(a)] that the defendant knew the actual age of the child.'" Fletcher, 634 F.3d at 400 (alteration in original and internal quotation marks omitted) (quoting X-Citement Video, 513 U.S. at 76). Furthermore, the Supreme Court has noted (albeit in a different context) that "many sex crimes involving minors do not ordinarily require that a perpetrator know that his victim is a minor." Flores-Figueroa v. United States, 556 U.S. 646, 653 (2009).

Thanks to the clear statutory language and legislative history, there is simply no question that a defendant's mistake of age of the victim is not a defense to a production of child pornography charge. By not requiring knowledge of the victim's age, Congress intended production of child pornography to be a strict liability crime in that regard, akin to statutory rape. See United States v. Velazquez, 777 F.3d 91, 95 (1st Cir. 2015) (recognizing that the category of "strict liability sex crimes

-58-

against minors" includes statutory rape); <u>X-Citement Video</u>, 513 U.S. at 64, 74-76 and 76 n.5 (discussing Congress's intent to exclude a scienter requirement and noting that "producers [of child pornography] may be convicted under § 2251(a) without proof they had knowledge of age").

### ii.    Constitutional Arguments

Having concluded that Congress did not intend to provide a mistake of age defense, the next question is whether such a defense might be constitutionally required.  Although the parties have not briefed any constitutional issue from the perspective of a defendant charged as a principal, they have addressed an aider and abettor's liability.  Encarnación rests his constitutional arguments entirely on the First Amendment and the Commerce Clause, eschewing any sort of due process claim.  Accordingly, I confine my inquiry to those issues only.

### a)    First Amendment

Encarnación argues that the First Amendment requires a mistake of age defense because, in its absence, 18 U.S.C. § 2251(a) would "chill" constitutionally protected speech.  The concern expressed in his brief is that an employee of a legitimate producer of commercial pornography who is only ancillarily involved with the filming (e.g., a lighting or set designer) could be facing a 15-year jail term if the producer failed to verify that all of the performers were adults.  The Ninth Circuit, in a case relied on by

Encarnación, addressed such a situation in <u>United States</u> v. <u>U.S. Dist. Ct. for Cent. Dist. of Cal., Los Angeles, Cal.</u>, 858 F.2d 534 (9th Cir. 1988) (reading a reasonable mistake of age defense into an 18 U.S.C. § 2251(a) prosecution against producers of commercial pornography where a minor engaged in a sophisticated, long-lived, and successful charade to pass herself off as an adult to the commercial pornography industry).

First, I note that neither Encarnación's hypothetical nor <u>U.S. Dist. Ct.</u> have anything to do with the facts of this case. In no way was Encarnación involved in the production of legitimate, commercial pornography. Thus, he has not presented anything that would allow me to conclude that holding a producer strictly liable for the age of the victim is unconstitutional as applied to him.

Moreover, Encarnación fails to come forward with anything more than speculation in support of his First Amendment argument that failing to provide a mistake of age defense will "chill" constitutionally protected speech. <u>See</u> <u>Fletcher</u>, 634 F.3d at 402 ("[T]he relevant question for us is whether § 2251 as written risks chilling such a substantial amount of protected conduct that the absence of a mistake-of-age defense outweighs the government's indisputably compelling interest in protecting children from the documented ills of child pornography."). Given the complete lack of evidence that enforcing the statute as written (i.e., without a mistake of age defense) will chill (or has already chilled) <u>any</u> protected speech, I would be "hard-pressed to conclude that the

-60-

plainly legitimate sweep of the statute is outweighed by the possibility that the production of some protected pornography may be chilled." Id. at 404. I also note that every other circuit to have considered U.S. Dist. Ct. has rejected its holding and declined to find that the First Amendment requires a reasonable mistake of age defense to a charge of producing child pornography. See id. at 404-05 (cataloguing cases).

Our circuit has yet to weigh in on this question. Encarnación's briefing, however, is not helpful because he has done nothing more than parrot back the Ninth Circuit's reasoning in U.S. Dist. Ct., with no discussion whatsoever as to why any of the six other circuits that have rejected his First Amendment argument got it wrong. I would, therefore, simply find that Encarnación has failed to show that the statute is unconstitutionally overbroad without a mistake of age defense being made available to those charged with violating 18 U.S.C. § 2251(a) as principals, at least based upon Encarnación's particular First Amendment challenge.

### b)     Commerce Clause

Encarnación also says that a mistake of age defense is required by the Commerce Clause.  His argument on this is simple: "[t]he production [of child pornography] statute was enacted to counteract the evils of interstate trade in child pornography.  But what if the subjects in the video look like adults?"  Appellant's Br. at 21.  This argument is insubstantial and merits no great comment.

Encarnación cites no case invalidating § 2251(a) on Commerce Clause grounds.  Indeed, he acknowledges that we have already upheld the statute against just such a challenge.  United States v. Morales-de Jesus, 372 F.3d 6, 16 (1st Cir. 2004) ("Congress, in an attempt to halt interstate trafficking, can prohibit local production [of child pornography] that feeds the national market and stimulates the demand, as this production substantially affects interstate commerce.") (internal quotation marks omitted).

Undaunted, Encarnación presses on, saying that we left the door open to an as-applied Commerce Clause challenge.  See id. at 18.  But this does not win the day for him either, as we rejected the as-applied challenge on the facts of Morales-de Jesus. Id. at 21.  The defendant in that case "sexually exploited a thirteen-year-old girl, coercing her into performing sex acts with him on multiple occasions, for the purpose of videotaping their encounters."  Id.  We found that it was not even a close case, as

-62-

the conduct appeared to be "well within the bounds of what Congress intended--and had the authority--to proscribe under its Commerce Clause power."  Id.

The fact that Encarnación had sex with a fourteen-year-old instead of a thirteen-year-old does nothing to distinguish this case from Morales-de Jesus.  His as-applied challenge, therefore, fails.

**4.  Summing Up**

By concluding that Encarnación pleaded guilty as a principal and that a mistake of age defense is not available to an individual charged with producing child pornography as a principal, it becomes unnecessary to address the parties' arguments on whether the defense is available to an aider and abettor.  Even if Encarnación could demonstrate that the district judge erred because an aider and abettor like himself is entitled to such a defense, any error was undoubtedly harmless:  his conviction as a principal would still stand and the district judge ultimately imposed the minimum jail term allowed by statute.  Thus, prevailing on his arguments could not possibly result in him receiving a shorter sentence.

I would, therefore, affirm Encarnación's conviction and sentence on the basis of his having pleaded guilty as a principal, not just an aider and abettor.[25]

---

[25] The majority is apparently uncomfortable with affirming on this basis because it feels that the government has not briefed the

## 5. <u>Rosemond</u> Does Not Require Adoption of the Majority's Rule

The majority, based on its reading of <u>Rosemond</u>, concludes that the government must prove beyond a reasonable doubt that an aider and abettor to a § 2251(a) offense knew the victim was a minor. Even if I were to reach the aiding and abetting arguments, I cannot agree that <u>Rosemond</u> requires us to adopt this bright-line rule on the facts before us.[26]

issue. I find the majority's discomfort puzzling.

After all, the majority's conclusion that the government is required to prove knowledge of age as an element of the crime comes in spite of the fact that Encarnación <u>expressly disclaimed</u>, and therefore waived, this theory in his opening brief. Appellant's Br. at 20 ("[Encarnación] is asking for . . . a mistake of age defense, not that knowledge of age be an element that the government must prove . . . ."). And when we instructed him to specifically brief the question of whether <u>Rosemond</u> requires the government to prove an aider and abettor's knowledge of age as an element of the crime, he gave us nothing more than conclusory statements to the effect of, "yes, it does," without explaining how or why he believes this is so. Nowhere in his four-sentence treatment of <u>Rosemond</u> does he, similar to what the majority does, address the obviously different mens rea requirements between the drug offense in <u>Rosemond</u> and the strict liability sex crime here. As this is far from the type of developed argument we normally require, Encarnación's cursory treatment of <u>Rosemond</u> further opens him to a finding of appellate waiver. <u>See</u> <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

But, since it appears that we will be overlooking inadequate (or at least questionable) briefing of a significant issue no matter how we resolve this case, I think we should do so in a way that allows us to decide this appeal on the narrowest grounds possible, and consistent with our well-established precedent, by concluding that Encarnación pleaded guilty as a principal. <u>See</u> <u>Belville</u> v. <u>Town of Northboro</u>, 375 F.3d 25, 30 (1st Cir. 2004). Moreover, and as I will explain, Encarnación's argument based on <u>Rosemond</u>, even if not waived, is unavailing.

[26] A quick note on the standard of review. Encarnación did not preserve the issue that he now argues on appeal, thereby opening

As the government points out in its brief, Rosemond involved something very different from the strict liability crime of producing child pornography, and so may not apply at all here. Rosemond addressed the "double-barreled" crime of using (or carrying) a gun during the commission of a violent or drug trafficking offense in violation of 18 U.S.C. § 924(c). 134 S. Ct. at 1245. The Court determined that a defendant is liable for aiding and abetting a § 924(c) offense where he "has decided to join in the criminal venture, and share in its benefits, with full awareness of its scope--that the plan calls not just for a drug sale, but for an armed one." Id. at 1249.

What's more, the majority, in my opinion, overlooks what could be a critical distinction between Rosemond and the case here: Rosemond did not involve strict liability sex crimes, or even

himself up to the strictures of plain error review. But, for whatever reason, the government did not argue that we should apply plain error review, and in light of this the majority applies de novo review instead. In the process of explaining why, it cites United States v. Tapia-Escalera, 356 F.3d 181, 183 (1st Cir. 2004). In that case, we declined to apply plain error review because the standard of review made no difference to the outcome (and because the plain error review would have itself been complicated given the issues at play). Id. Ditto with respect to United States v. Duquette, 778 F.3d 314 (1st Cir. 2015), where we said that some claims on appeal would get plain error review, while others we would review de novo. Id. at 317 n.3. Nevertheless, we noted that the same outcome would obtain regardless of which standard of review we employed because the appellant failed to show that an error occurred in the first place. Id. Accordingly, and as a matter of convenience, we "just consider[ed] our entire review to be de novo and move[d] on." Id. Here, nothing turns on whether I apply de novo or plain error review. Like we did in Tapia-Escalera and Duquette, I review the issue de novo.

strict criminal liability on the part of the principal at all. Indeed, the takeaway from Rosemond is that an aider and abettor must have the same amount of knowledge as does the principal about the scope of the contemplated crime, and thereby "becomes responsible, in the typical way of aiders and abettors, for the conduct of others," that is, the principal offender(s). Id. The principal in a § 924(c) prosecution must have both intended to (1) engage in a drug transaction and (2) do so while armed. Logically then, and as the Supreme Court concluded, an accomplice must know that an armed drug sale was going to happen in order to be guilty of aiding and abetting a § 924(c) offense.

The offense in Rosemond stands in stark contrast to the production of child pornography, where a principal is guilty so long as he has filmed a minor engaging in sexually explicit conduct, even if the principal intended to film an adult. Thus, under Rosemond's principles, when it comes to the strict liability sex crime of producing child pornography, the aider and abettor only needs to know that he is assisting or facilitating the filming of sexually explicit activity to have a "full awareness of [the] scope" of the crime. Id. at 1249. Nothing in Rosemond requires (or even points the way towards) a finding that an aider and abettor who is present and participates in the crime must have additional knowledge, unknown to the principal, about the facts and

circumstances of that particular crime.  In my view, <u>Rosemond</u>

simply does not require us to adopt the majority's rule.[27]

_____

[27] In addition, citing 2 LaFave § 13.2(f), the majority says that even if a principal does not need to have knowledge of the victim's minority to be guilty of violating § 2251(a), "the government's argument that an aider and abettor must also be held liable without fault has been rejected by longstanding law." Majority Op. at 16.  In his treatise, LaFave states that, when it comes to strict liability crimes, "[i]t has been argued that in such a case the accomplice may be held on a liability-without-fault basis if the crime committed by the principal is of the strict liability variety, but this argument has been rejected." 2 LaFave § 13.2(f).  LaFave cites two cases in support of this proposition, neither of which is binding upon us.

One, <u>State</u> v. <u>Bowman</u>, 656 S.E.2d 635 (N.C. Ct. App. 2008), is from North Carolina's intermediate court of appeal.  And, as I explain later, <u>Bowman</u> is readily distinguishable.

The second case is more than a half-century old and comes to us from an English court.  <u>Johnson</u> v. <u>Youden</u>, [1950] 1 K.B. 544.  <u>Johnson</u>, never before cited by any state or federal court, does not even appear to deal with a charge of aiding and abetting a strict liability crime.  The principal defendant in <u>Johnson</u>, a homebuilder, violated a regulation capping the price at which a house could be sold by collecting a separate charge, paid to him in advance.  <u>Id.</u> at 544.  He then hid that fact from the attorneys he hired to effectuate the real estate sale.  <u>Id.</u>

One of the three attorneys accused of aiding and abetting discovered the excess charge (of which the other two remained wholly ignorant), and was told by the homebuilder that the money had been put into a separate account "to be spent on payment for work, as and when [the homebuilder] would be able lawfully to execute it in the future, on the house on the purchaser's behalf." <u>Id.</u> at 544-45, 547.  That particular attorney assisted in the sale despite his knowledge of the excess charge because he concluded the charge was legal.  <u>Id.</u> at 548.  The English court concluded that this attorney was guilty of aiding and abetting the homebuilder's regulatory violation since his mistaken analysis was no defense. But the other two attorneys, who did not know the charge had been collected in the first place, could not be held liable.  <u>Id.</u> at 546-47.  Several thoughts come to mind.

First, because the homebuilder was obviously aware of the fact that he had collected this separate charge, <u>Johnson</u> simply did not involve a strict liability crime like the one we must deal with, so I do not find its reasoning particularly persuasive.  Second, and to the extent that <u>Johnson</u> could be said to have any bearing on this case, its logic is consistent with mine.  By having sex with

I also note that neither the parties nor the majority have cited any federal case discussing the degree of knowledge necessary to hold someone criminally liable as an aider and abettor of the production of child pornography. My own research has not turned up any, either. And there are only a couple of state court decisions dealing with this situation. The different outcomes reached by the state courts illustrate why I hesitate to use this poorly briefed case as a vehicle for adopting a blanket rule applicable to all strict liability sex crimes.[28]

---

KMV knowing that he was being filmed, Encarnación became like the attorney who gained knowledge of the excess charge but concluded (erroneously) that he could effectuate the transaction without running afoul of the law. Had Encarnación advanced a different defense, for example, that he did not know he was being filmed, then he might be in a position similar to the two attorneys who were unaware the charge had been collected in the first instance. But Encarnación has never contended he was unaware the camera was rolling, so Johnson can provide him no shelter in any event.

Furthermore, even though LaFave says that criminal liability can not be imposed on a no-fault basis even when it comes to strict liability crimes, he made sure to point out that "[t]his is to be distinguished from the situation where the crime is not totally of a strict liability type, but no awareness is required as to some attendant circumstance to convict either the principal or the accomplice." 2 LaFave § 13.2(f). Production of child pornography fits this mold, as the guilty principal need know only that he is producing a visual depiction of sexually explicit conduct, with the victim's age acting as the attendant circumstance. Thus, even LaFave leaves open the possibility that an aider and abettor to the production of child pornography in violation of § 2251(a) could properly be convicted without proof that he knew the victim was a minor. LaFave's treatise, therefore, even if considered as persuasive authority, does not call for the majority's sweeping rule.

[28] By discussing these state cases, I do no intimate that I believe they are binding or that we should defer to the legal reasoning of these courts. I address them because they reflect the complexities other courts have grappled with when confronted by the

First, in a case relied upon by the majority, a North Carolina appellate court has found that to be guilty of aiding and abetting the strict liability crime of statutory rape, the accomplice must have "acted with knowledge that the [victim was] under the age of sixteen."  State v. Bowman, 656 S.E.2d 635, 651 (N.C. Ct. App. 2008).[29]  Bowman involved a situation in which the alleged aider and abettor did not actually participate in sexual activity with any of the minor victims, and arguably was not "present" at the time and place of the crime.  See id. at 637.

By contrast, the Massachusetts Appeals Court concluded (after discussing Bowman) that knowledge of age is not necessary to convict a joint venturer of statutory rape where the facts showed that the accused, while he did not participate in any sexually explicit conduct with the victim, was nevertheless "'present' during commission of the crime and had as much opportunity as the principal to make judgments about [the victim's] age."

_____

question facing us today.

[29] Along the way, Bowman cites an old case out of California, People v. Wood, 56 Cal. App. 431, 205 P. 698 (1922), for the proposition that statutory rape is a strict liability crime, but aiding and abetting a statutory rape is not.  See Bowman, 656 S.E.2d at 650.  The citation is curious, as Wood simply did not discuss whether and under what circumstances statutory rape could constitute a strict liability crime.  Further, the Wood court explicitly noted that the defendant "knowingly both aided and abetted" another's commission of a statutory rape, as he procured a room for the principal even though the defendant "knew the illegal purpose for which the room was to be used."  Wood, 56 Cal. App. at 432, 205 P. at 698 (emphasis added).  Strict liability for an aider and abettor was just not an issue in that case.

Commonwealth v. Harris, 904 N.E.2d 478, 486-87 (Mass. App. Ct. 2009). The defendant in Harris also took affirmative actions to assist the crime, as he drove the vehicle in which the victim and principals rode, picked up the alcohol that the principals used to get the victim drunk, drove to two different motels to procure a room, and was in the motel room when the principals took turns having sex with her, "sometimes watching television and sometimes watching what the others were doing to her." Id. at 480-81.

Bowman and Harris give me pause in definitively answering Encarnación's question of whether, and under what circumstances, an aider and abettor of the production of child pornography is entitled to a mistake of age defense. Like so much else in the law relevant to defenses, I believe the answer is rooted in the specific evidence adduced in each particular case. See, e.g., Mathews v. United States, 485 U.S. 58, 63 (1988) ("As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."); United States v. Lopez-Lopez, 282 F.3d 1, 18 (1st Cir. 2002) ("The defendant is not entitled to an instruction on a defense when the evidence in the record does not support that defense."). It seems likely to me that both policy and due process concerns (which have not been raised here) may require us to make the defense available to certain aiders and abettors who were not present and did not participate in the actual sex acts. Perhaps the theoretical set

decorator, for whom the majority expresses much concern, operating at such a distance from the filming so as to be unable to personally explore the age of the minor, would be one such defendant. But that is not this case.

To the extent we consider him an aider and abettor, Encarnación placed himself in a position indistinguishable from that of the principal when he participated in the production of child pornography by having sex with the minor victim before the camera. His opportunity to gauge for himself the victim's age was just as good as (or even better than) the one afforded to the man holding the camera. The policy reasons (which flow from due process concerns) that favor presentment of a mistake of age defense by a clueless, non-present, non-participant aider and abettor vanish when it comes to Encarnación. And, in my view, nothing in Rosemond requires us to fashion a rule allowing Encarnación to present a mistake of age defense given the admitted facts in the record.[30]

---

[30] One of Rosemond's chief concerns is the idea that an accomplice without "advance knowledge" of the nature of the crime lacks any opportunity to "alter [the] plan or . . . withdraw from the enterprise." Rosemond v. United States, 134 S. Ct. 1240, 1249 (2014). And without a "realistic opportunity to quit the crime" after having gained knowledge of its full scope, a defendant does not have "the requisite intent to assist" that particular crime. Id. Although Rosemond does not establish a bright-line rule telling us exactly when an individual defendant has had that "realistic opportunity to quit the crime," it is beyond dispute that Encarnación did: the uncontested evidence in the record shows that not only did he come face-to-face with his victim, but also that Encarnación engaged in sexually explicit conduct with her before a camera on more than one occasion. Rosemond's underlying

In sum, because Encarnación was a present, participating aider and abettor in the strict liability crime of production of child pornography, I cannot agree with the majority's conclusion that <u>Rosemond</u> requires the government to prove that Encarnación--or other similarly situated aiders and abettors--was aware that his victim was a minor. I would leave for another day, in a case where the <u>Rosemond</u> issue is squarely raised and has been fully fleshed out in the parties' briefs,[31] the question of whether an individual charged only as an aider and abettor to the production of child pornography in violation of 18 U.S.C. § 2251(a) may be entitled to a mistake of age defense and, if so, whether the government or the defendant bears the burden of proof on that defense.

### III.  CONCLUSION

For the foregoing reasons, I would affirm Encarnación's conviction and dismiss his appeal.

---

concern is simply not present on these facts.

[31] With an analysis that goes beyond a simple, "yes, it does."